# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION

| | |
|---|---|
| **RAJESH VERMA**, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>**WALDEN UNIVERSITY, LLC**<br><br>                    Defendant. | **Case No. 22-cv-776-BJD-JBT** |

# PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASSES, AND ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................ 1

II.    BACKGROUND ............................................................................................. 1

   A.    Plaintiff's Allegations and Procedural History ........................................... 1

   B.    The Settlement ............................................................................................ 3

         1.    Defined Classes ................................................................................ 3
         2.    Monetary Relief ............................................................................... 4
         3.    Release ............................................................................................. 4
         4.    Attorneys' Fees and Costs ................................................................ 4
         5.    Notice .............................................................................................. 5

III.   DISCUSSION ................................................................................................. 5

   A.    Legal Standard for Final Approval .............................................................. 5

   B.    Final approval is warranted ......................................................................... 6

         1.    There was no fraud or collusion in reaching the settlement. ................... 6
         2.    Success at trial is uncertain. ............................................................. 7
         3.    The recovery under the settlement is substantial. .................................. 9
         4.    Continued litigation would be lengthy, complex, and expensive ........... 10
         5.    There is no opposition to the settlement. ............................................ 10
         6.    The case settled early, but at an "inflection" point. ............................ 11

IV.    The Settlement Classes should be finally certified. ........................................ 11

   A.    Rule 23(a) is Satisfied. ............................................................................. 12

         1.    Numerosity. ................................................................................... 13
         2.    Commonality. ................................................................................. 13
         3.    Typicality. ..................................................................................... 14
         4.    Adequacy. ...................................................................................... 14

   B.    Rule 23(b)(3) is Satisfied. ........................................................................ 17

         1.    Predominance. ................................................................................ 17
         2.    Superiority. .................................................................................... 22

V.     CONCLUSION ............................................................................................. 22

## I.   INTRODUCTION

On May 16, 2024, the Court preliminarily approved a class action settlement ("Settlement" or "Settlement Agreement") between Plaintiff Rajesh Verma ("Plaintiff") and Defendant Walden University, LLC ("Defendant") (collectively with Plaintiff, "Settling Parties"). [Dkt. 60.]

Since then, notice (including a reminder notice) was successfully disseminated and there has been no opposition to the Settlement. As for claims: 86 National Class Members and 12 Florida Class Members filed claims. Declaration of Demetrius Jenkins ("ALCS Decl."), ¶ 9. This amounts to a claims rate of 9.6% for the Florida Class and 2.2% for the National Class.

Under the Settlement, Defendant agreed to pay $97.50 to each of the National Class Members who filed an Approved Claim, and $400 to each of the Florida Class Members who filed an Approved Claim ("Settlement Relief"). In addition, Plaintiff's efforts made Defendant aware of a purported glitch allegedly causing the calls at issue, preventing a potentially significant number of such calls from being made to Class Members or other persons.

## II.   BACKGROUND

### A. Plaintiff's Allegations and Procedural History

The Florida Telephone Solicitation Act ("FTSA") prohibits a "telephone solicitor" from initiating telephonic sales calls to a consumer who has previously asked the solicitor to stop. Fla. Stat. § 501.059(5). The Telephone Consumer Protection Act

1

("TCPA") prohibits initiating calls for telemarketing purposes without certain minimum policies and procedures. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d).

On July 14, 2022, Plaintiff filed his initial class action complaint against Defendant alleging that Defendant placed telephone calls regarding its for-profit University to Plaintiff after he asked Defendant to stop. [Dkt. 1.] On August 5, 2022, Defendant moved to dismiss, which Plaintiff opposed. [Dkts. 9, 15, 26.] On January 18, 2023, Defendant withdrew its Motion to Dismiss. [Dkt. 35.] On March 2, 2023, Plaintiff filed a First Amended Complaint ("FAC"). [Dkt. 40.] On March 16, 2023, Defendant filed an Answer and Affirmative Defenses wherein it generally denied any wrongdoing. [Dkt. 42.]

The Court entered its initial Case Management and Scheduling Order on August 31, 2022, setting the discovery deadline as September 5, 2023 and trial to begin on April 1, 2024. [Dkt. 20.] On December 8, 2022, in response to the request of the Settling Parties, the Court issued an Amended Case Management and Scheduling Order, setting discovery for December 4, 2023 and trial for July 8, 2024. [Dkt. 30.] On March 29, 2023, again in response to the request of the Settling Parties, the Court modified the scheduling order to limit discovery to Plaintiff Verma's individual claims, and to allow for Defendant to file dispositive Motions on those individual claims. [Dkt. 42.]

Prior to the Settlement, Plaintiff had served 38 Requests for Production, one Interrogatory, and five Requests for Admission. Defendant's responses to these requests covered hundreds of pages worth of documents and spreadsheets which were

2

sufficient to enable Plaintiff to evaluate the viability of his class claims and direct his efforts accordingly. The discovery Plaintiff served, Defendant's responsive production, and the resultant mutual recognition of certain key issues driving the future of the case led the Parties to agree that it would be worthwhile to explore settlement.

To that end, the Settling Parties agreed to mediation with Terrence White. This in-person mediation was conducted in Orlando, Florida on September 18, 2023. At the end of this full day of mediation, the Settling Parties reached the principle terms of the Settlement Agreement discussed herein.

### B. The Settlement

#### 1. Defined Classes

The proposed Settlement Classes are defined as follows:

Since June 6, 2018, all persons to whose telephone number Defendant placed (or had placed on its behalf) more than one telephone call in a 12-month period for the purpose of encouraging enrollment in or providing information about Walden University, after that person had asked Defendant to stop calling.

("National Class")

Since July 1, 2021, all persons to whose telephone number with a Florida area code Defendant placed (or had placed on its behalf) a telephone call for the purpose of encouraging enrollment in or providing information about Walden University after that person had asked Defendant to stop calling.

("Florida Class").

Settlement Agreement, §§ 3.1.1; 3.1.2. The National Class consists of approximately 3,773 persons meeting the definition of the National Class, and approximately 123 persons meeting the definition of the Florida Class.

### 2.  Monetary Relief

The Settlement Agreement requires Defendant to pay $97.50 to each National Class Member who submits an Approved Claim and $400 to each Florida Class Member who submits an Approved Claim. Settlement Agreement § 4.1. Members of both Classes may not recover under both (i.e. Florida Class Members will receive $400, even if they are also members of the National Class). *Id.* at § 4.1.2. Defendant also agreed to separately cover any awarded attorneys' fees and all costs, including administrative costs and attorneys' costs. *Id.* at §§ 4.1; 15.1.

If, after distribution payments, any cash remains from uncashed checks after 90 days of issuance of the checks, those amounts will be returned to Defendant. *Id.* at 4.1.4.

### 3.  Release

Upon Final Approval, members of the Settlement Class who do not opt out will have released all Released Claims against each and every one of the Released Parties. *Id.* § 10, *et seq.*. Plaintiff and the Settlement Class Members further agree not to sue any of the Released Parties with respect to any of the Released Claims. *Id.* § 10.4.

### 4.  Attorneys' Fees and Costs

Class Counsel applied for $103,705.75 in fees, constituting 24.88% of the total cash value, and $8,310.40 in costs, plus reasonable costs related to the final approval hearing (but in no event to exceed $10,000 in costs). [Dkt. 63.] The Magistrate Judge recommended that the cost and fee motion be granted as to the fees and stated costs, but expressed no opinion on the reasonableness of costs incurred related to the final

approval hearing. [Dkt. 65.]

### 5.  Notice

The Claims Administrator was American Legal Claim Services, LLC ("ALCS"). As contemplated by the Settlement Agreement, notice was provided by email on June 30, 2024, reaching approximately 89.3% of the class members. ALCS Decl., ¶ 5. On September 9, the Parties also jointly agreed to a subsequent "reminder" notice—not required by the Settlement—to maximize the claims rate and ensure no one is left out because they "forgot". ALCS Decl., ¶ 6. This nearly doubled the overall claims rate from where it stood at that time.[1] *Id.*

## III.    DISCUSSION[2]

### A. Legal Standard for Final Approval

"In deciding whether to finally approve a class action settlement, courts must consider the Federal Rule of Civil Procedure 23(e)(2) factors, which assure that the Agreement is 'fair, reasonable, and adequate' based on several factors such as whether the relief is adequate and the settlement treats all members equitably." *Roll v. Enhanced Recovery Co., LLC*, 2023 U.S. Dist. LEXIS 44625, *2 (M.D. Fla. Mar. 16, 2023)

---

[1] The Parties worked together exceptionally well in the settlement administration process. This reminder notice was just one example. The other was Defendant's willingness to pay for claims excluded solely for being untimely.

[2] Because the Motion for Preliminary Approval thoroughly discussed most factors relevant to Final Approval and Certification, the discussion section herein is very similar to the Motion for Preliminary Approval, with updates made as needed based on post-Preliminary Approval developments (e.g. claims rate and the lack of opposition).

(quoting Fed. R. Civ. P. 23(e)(2). Here, as discussed below, the relief was very strong compared to other settlements in this space. Furthermore, the Settlement pays $97.50 to each National Class Member and $400 to each Florida Class Member regardless of the claims rate, treating the members of each Class equitably.

Courts must also consider the factors outlined in *Bennett*, which overlap with the remaining Rule 23(e) factors. *Id.* (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

> (1) the influence of fraud or collusion on the parties' reaching a settlement, (2) "the likelihood of success at trial," (3) "the range of possible recovery," (4) "the complexity, expense[,] and duration of litigation, (5) "the substance and amount of opposition to the settlement," and (6) "the stage of proceedings at which the settlement was achieved."

*Holman*, 2009 U.S. Dist. LEXIS at *15 (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)) (hereinafter, "Bennett Factors"). These factors were discussed at length in Plaintiff's Motion for Preliminary Approval and in the Court's orders granting preliminary approval. [Dkts. 58, 60.] These factors will be discussed again here for convenience and updated as necessary (specifically to note the lack of opposition to the Settlement).

## B. <u>Final approval is warranted.</u>

### 1. There was no fraud or collusion in reaching the settlement.

"Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Hanley v. Tampa Bay Sports & Ent'mt LLC*, 2020 U.S. Dist. LEXIS 89175, *10 (M.D. Fla. Apr. 23, 2020) (citing *Saccoccio v. JP Morgan Chase Bank*, N.A. 297 F.R.D. 683, 691 (S.D. Fla. 2014)). This case was

resolved after a full day of mediation before a well-respected mediator. Accordingly, there was no fraud or collusion in reaching the settlement.

### 2. Success at trial is uncertain.

The "likelihood of success at trial" is "the most important factor in evaluating a class action settlement." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323 (S.D. Fla. 2007). Here, that success is far from certain on several levels.

First, Defendant raised concerns about whether Plaintiff's telephone number would qualify as a "residential" telephone number—required under the TCPA—and, more broadly, whether it is possible to determine on a class-wide basis if a number was residential. Case law on this issue is mixed. For example, some courts have examined a person's actual use of their phone to determine if it qualifies as residential. *See, e.g., Mantha v. QuoteWizard.com, LLC*, 2022 U.S. Dist. LEXIS 195902, *13-15 (D. Mass. Feb. 3, 2022). Other courts, however, have found that what matters is whether the telephone belongs to a business plan or a personal plan. *See Spurlark v. Dimension Serv. Corp.*, 2022 U.S. Dist. LEXIS 120468, *8 (S.D. Ohio July 7, 2022) ("A 'residential telephone subscriber' is a 'subscriber to a telephone exchange service that is not a business subscriber.' 47 C.F.R. § 64.2305(d)."); *Rose v. New TSI Holdings, Inc.*, 2022 U.S. Dist. LEXIS 56525, *6 (S.D.N.Y. Mar. 28, 2022) ("The FCC, which possesses authority to issue implementing rules and regulations for the TCPA … defines a 'residential subscriber" as a "subscriber to a telephone exchange service that is not a business subscriber,' 47 C.F.R. § 64.2305(d)."); *Kemen v. Cincinnati Bell Tel. Co. LLC*, 2023 U.S. Dist. LEXIS 11552, *12 (S.D. Ohio, Jan. 23, 2023). The former

interpretation proves challenging—though not necessarily insurmountable—to the certification of a class consisting only of residential numbers.

Second, there is an open question as to the level of deference owed to the FCC's interpretations and rulemaking surrounding the TCPA, as it relates to issues such as whether a cell phone number is properly allowed on the Do-Not-Call Registry in the first place. The FCC has determined that they are, but regulatory law is in flux after the Supreme Court's 2024 decisions in *Loper Bright* and *Corner Post*.[3] While Plaintiff still believes 11th Circuit courts remain bound by the Hobbs Act to follow the FCC's determination on this front—indeed, *Corner Post* appears to have left the Hobbs Act undisturbed—it may be only a matter of time before this too changes. Several recent Supreme Court and 11th Circuit cases have hinted at this possibility. *See PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019); *Gross Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1105-12 (11th Cir. 2019) (Pryor, J., concurring); *Turzio v. Subway Franchisee Adver. Fund Trust LTD.*, 603 F. Supp. 3d 1334, 1341-42 (S.D. Fla. 2022). Should this change come to pass, it is possible Plaintiff and National Class members lose any claim rooted in the National Do-Not-Call Registry.

Third, while the FTSA claim mandates a $500 minimum per violative call, under the TCPA provision at issue, damages are "up to" $500 per call rather than the $500 minimum. *Compare* 47 U.S.C. § 227(c)(5) *with* 47 U.S.C. § 227(b)(3). While the

---

[3] These types of changes are precisely what Plaintiff had in mind in choosing to resolve the case when he did, and to what Plaintiff was referring in the Motion for Preliminary Approval when he wrote about "the shifting landscape at the appellate level" potentially impacting the case as it moved forward.

Parties strongly disagree (and would continue to disagree) about Defendant's level of culpability for the post-stop calls here (e.g. the adequacy of any policies it had in place), that outcome and its impact on damages is far from certain.

Accordingly, "the uncertain path to recovery suggests that the Settlement Agreement may represent the better alternative for Plaintiff and the class versus continued litigation." *Hanley*, 2020 U.S. Dist. LEXIS at *11.

### 3.  The recovery under the settlement is substantial.

"The second and third considerations of the *Bennett* test are easily combined. A court first determines the range of recovery by resolving various damages issues. The court then determines where in this range of possible recovery do fair, adequate, and reasonable settlements lie." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988). "The range of possible recovery spans from a finding of non-liability to a varying range of monetary and injunctive relief." *Saccoccio*, 297 F.R.D. at 593. "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Behrens*, 118 F.R.D. at 542.

The Settlement Agreement here provides excellent recovery to Class Members, especially in comparison to other TCPA-based settlements. Damages at trial range from $0 (on a finding of non-liability and/or that no damages were warranted) to more than $4 million, on a finding of full-liability and a full $500 per call. But the $4 million number is almost certainly illusory. On a factual basis, Defendant has suggested the calls were the result of a glitch, and a juries' determination as to Defendant's level of culpability for that glitch would likely drive whether any damages awarded are

nominal or significant. There was enough here, learned through discovery, for Plaintiff to believe that he was unlikely to obtain a full $500 per call for the National Class.[4]

Despite these concerns, to the best of Class Counsel's knowledge, the relief here exceeds or is comparable to the relief in most approved TCPA settlements. As one court has noted, most TCPA settlements result in a "range from $20 to $100 per-class member." *Retina Assocs. Med. Group. v. Keeler Instrumenets*, 2019 U.S. Dist. LEXIS 239998, *10 (C.D. Cal. Dec. 13, 2019). The National Class payment ($97.50) is just under the upper-end of that range, and the Florida Class payment ($400) far exceeds it.

Accordingly, the Settlement here falls within the range of reasonableness.

### 4. Continued litigation would be lengthy, complex, and expensive.

As discussed above, this case presented novel legal issues that, if resolved in Defendant's favor, would potentially bar recovery altogether, and if resolved in Plaintiff's favor, would nevertheless result in uncertain damages. Furthermore, regardless of which side prevailed, and regardless of any damages awarded, appeals would almost certainly follow, given the ever-shifting TCPA landscape, the novel issues presented, and the scarcity of court decisions on the FTSA.

### 5. There is no opposition to the settlement.

There has been no objection to the Settlement and there have been no opt-outs from the Settlement. ALCS Decl., ¶¶ 10-11. As of this filing, 86 National Class

---

[4] To be clear, the FTSA does not provide discretionary damages, but the Florida Class consists of "only" 123 people. The primary driver of damages in this matter would have been the National Class.

Members (2.2%) and 12 Florida Class Members (9.6%) submitted approved claims, for a combined claims rate of approximately 2.4%. *Id.* at ¶ 9.

### 6. The case settled early, but at an "inflection" point.

"The stage of the proceedings at which settlement is achieved is 'evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.'" *Saccoccio*, 297 F.R.D. at 694. "Early settlements are favored", such that "vast formal discovery need not be taken." *Id.*

The case here settled relatively early, but not before significant, targeted discovery had been taken. This discovery crystallized many of the issues moving forward—such as the size of the classes, issues regarding consent and revocation, and issues regarding residential versus business purpose of Plaintiff's and Class Members' phones. There were no secrets as to the Parties' positions on these issues moving forward, and that these issues were what would drive the Litigation. As such, with all the cards down, it made sense to explore a resolution before significant additional time and expense was spent on additional discovery, including depositions.

To that end, the Parties attended an all-day mediation with a respected mediator familiar with this area of law. With his help, the case resolved with the Settlement presented here.

Accordingly, this factor weighs in favor of Settlement.

## IV. The Settlement Classes should be finally certified.

"A class may be certified 'solely for purposes of settlement [if] a settlement is

reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006). In the settlement context, "the requirements of Rule 23, Federal Rules of Civil Procedure, that serve 'to protect absentees by blocking unwarranted or overbroad class definitions []demand undiluted, even heightened attention in the settlement context." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Plaintiff bears "the burden of establishing that each requirement of Rule 23(a) and at least one requirement of Rule 23(b) is satisfied."

Plaintiff respectfully requests that the Court finally certify the classes defined in the Settlement Agreement. For reference, the Settlement Classes are defined as:

> Since June 6, 2018, all persons to whose telephone number Defendant placed (or had placed on its behalf) more than one telephone call in a 12-month period for the purpose of encouraging enrollment in or providing information about Walden University, after that person had asked Defendant to stop calling.

> ("National Class")

> Since July 1, 2021, all persons to whose telephone number with a Florida area code Defendant placed (or had placed on its behalf) a telephone call for the purpose of encouraging enrollment in or providing information about Walden University after that person had asked Defendant to stop calling.

> ("Florida Class").

For the most part, the arguments in favor of class certification are identical for both classes, so they will be discussed jointly and distinguished only as necessary.

## A. **Rule 23(a) is Satisfied.**

Rule 23(a) requires (i) that the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common

questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named-representative and his or her counsel have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

### 1. Numerosity.

In the 11th Circuit, the numerosity requirement is generally satisfied when the number of class members exceeds 40. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Numerosity is met for both proposed classes. After de-duplication during the notice process, Defendant's records indicate that the proposed National Class had 3,908 members and the proposed Florida Class had 124 members.[5] ALCS Decl., ¶ 5.

### 2. Commonality.

Rule 23(a)(2) requires that there be questions of law or fact common to the class. "What matters to class certification … is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 351 (2011). Commonality is met for the proposed classes because there are numerous questions generating common answers, including, but certainly not limited to, (i) whether and why Defendant placed calls to Settlement Class Members after

---

[5] The National Class number is slightly higher than listed in Plaintiff's Motion for Fees, which makes Class Counsel's fee request lower as a percentage of the fund than what Judge Horovitz recommended be approved.

13

Defendant was asked to stop; (ii) whether Defendant's calls were telemarketing; and (iii) whether Defendant had the appropriate and required policies and procedures in place. For the Florida class, there is the additional common question of whether a number has a Florida area code. These questions are all susceptible to generalized proof and would drive the resolution of the matter for the classes.

### 3. Typicality.

Rule 23(a)(3) requires that the class representative's claims be "typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). "Typicality 'focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Benson v. Enter Leasing Co.*, 2021 U.S. Dist. LEXS 101057, *13 (M.D. Fla. May 11, 2021) (Dalton, J.) Plaintiff's factual basis and legal theories are identical to that of the rest of the classes: that he, a Florida resident with a Florida area code, asked Defendant to stop calling him and that Defendant continued to do so, and that these post-"stop" calls violate both the TCPA and the FTSA. [Dkt. 40.]

### 4. Adequacy.

Rule 23(a)(4) requires the representative parties to "fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). This requirement applies to both the named plaintiff and counsel. *Amchem Prods. v. Windsor*, 521 U.S. 591, 626, n. 20 (1997). The adequacy requirement is met here.

With respect to the proposed class representative, this inquiry "serves to uncover conflicts of interest between the named parties and the class they seek to

represent." *Id.* at 625. "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26. This requirement tends to merge with the commonality and typicality inquiries, "which serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 626, n.20 (quotations and citations omitted).

Plaintiff here has remained diligent and involved throughout this litigation. Plaintiff and his counsel are in frequent communication about all aspects of the case. Plaintiff has remained readily available throughout; has asked incisive questions; has reviewed filings; has reviewed, understood, and accepted the class-wide settlement; has promptly responding to any issues or concerns raised; and at all times has acted in the best interest of the Classes rather than himself. Plaintiff has fulfilled, and will continue to fulfill, his duties as representative of the Class.

Class Counsel also satisfies the adequacy requirement. Attorney Glapion has extensive experience litigating TCPA matters individually and on a class-wide basis. Since founding The Glapion Law Firm in May 2015, Attorney Glapion has been appointed co-lead counsel in *Willis et al. v. IHeartMedia, Inc.*, Case No. 16-CH-02455 (Cook County, Feb. 19, 2016), a TCPA class action in which the court approved an $8.5 million non-reversionary class action settlement, which was successfully administered. In 2017, Attorney Glapion was appointed as sole lead counsel in *Allard et al. v. SCI Direct, Inc.*, a TCPA class action in which the Court approved a $15 million

class action settlement, which was successfully administered. Case No. 17-cv-4692 (N.D. Illinois). In 2018, Attorney Glapion was also appointed co-lead counsel in *Griffith v. ContextMedia, Inc.*, Case No. 16-cv-2900 (N.D. Illinois), a TCPA class action in which the Court approved a $2.9 million settlement, which was successfully administered. In 2022, Attorney Glapion was appointed sole lead counsel in *Walker v. Highmark BCBS Health Options, Inc.*, 2020 U.S. Dist. LEXIS 225998 (W.D. Pa. Dec. 13, 2022), a $1.85m TCPA class action settlement which was successfully administered. In 2023, Attorney Glapion was appointed co-lead counsel in *DeSouza v. AeroCare Holdings LLC*, 22-cv-1047 (M.D. Fla. Aug. 7, 2023), a claims-made TCPA settlement with a total cash value of more than $5 million, which was successfully administered. Attorney Glapion has also recovered over $1 million for clients in hundreds of individual TCPA cases. Attorney Glapion's familiarity with the underlying law has and will continue to serve the Settlement Class well. *See* Declaration of Jeremy M. Glapion. Attorney Glapion has never been found to be inadequate counsel.

Co-Class Counsel, Attorney Kem has extensive experience litigating TCPA matters individually and on a class-wide basis. Attorney Kem was appointed co-lead counsel in *Martinez v. Medicredit*, Case No. 160-cv-01138 (E.D. Missouri), a TCPA class action in which the court approved a $5 million class action settlement, which was successfully administered. Attorney Kem has recovered substantial awards for individual TCPA litigants, both as confidential settlements and as judgments, including an individual judgment of $184,500 in *Bortmes v. National Brokers of America,*

16

*In.*, Case No. 16-cv-146 (N.D. Florida). Attorney Kem has also achieved substantial recoveries for individuals under other consumer protection statutes, including the Fair Debt Collection Practices Act and the Fair Credit Reporting Act. *See* Declaration of Eric W. Kem. Attorney Kem has never been found to be inadequate counsel.

Attorneys Glapion and Kem have diligently litigated this case. They identified and thoroughly pled viable claims on behalf of Plaintiff Verma and the Settlement Classes. They served discovery, opposed Defendant's Motion to Dismiss, responded promptly to Court orders and requirements, implemented and handled the strategy that resulted in the strong result here, and participated in the all-day mediation that brought about this settlement.

### B. <u>Rule 23(b)(3) is Satisfied.</u>

To certify a class under Rule 23(b)(3), there must be questions of law or fact common to the proposed class members, which predominate over any questions affecting only individual members, and the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). In the settlement certification context, manageability of a trial need not be considered. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (writing "a district court need not inquire whether the case, if tried, would present intractable management problems" in the context of settlement-only class certification.)

### 1. **Predominance.**

Under Rule 23(b)(3), a class may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions

affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The 'overarching purpose' of the predominance requirement is to ensure 'that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Benson*, 2021 U.S. Dist. LEXIS at *17-18 (quoting *Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1235 (11th Cir. 2016)). Predominance requires courts "to consider whether the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole predominate over those issues that are subject only to individualized proof." *Benson*, 2021 U.S. Dist. LEXIS at *18 (quoting *Sellers v. Rushmore Loan Mgmt. Servs.*, 941 F.3d 1031, 1040 (11th Cir. 2019). "To determine predominance, courts must: (1) identify the claims and defenses and their elements; (2) classify each as common or individual questions, by predicting how the parties will prove them at trial; and then (3) determine whether the common ones predominate." *Benson*, 2021 U.S. Dist. LEXIS 101057 at *18.

Plaintiff's operative First Amended Complaint has three claims: two under the TCPA and one under the FTSA. For the purposes of this Settlement, the two TCPA claims have been consolidated into the broader of the two (i.e. the second claim would likely involve a sub-class of the first claim, were this case to proceed).

### a. 47 C.F.R. § 64.1200(d)

Plaintiff's TCPA claim involves § 227(c) of the TCPA. To show a violation of § 227(c), Plaintiff must prove that he received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations

prescribed under § 227(c). *See Hand v. Beach Entm't KC*, 456 F. Supp. 3d, 1099, 1119 (W.D. Mo. 2020). The regulation at issue is § 64.1200(d), which requires that companies implement minimum policies and procedures for maintaining an internal do-not-call list prior to making any telemarketing call. 47 C.F.R. § 64.1200(d).

The rule, as currently codified, states:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber[6] unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d).

For Plaintiff to prevail on a claim under § 64.1200(d), he must show 1) he received from or on behalf of Defendant 2) more than one call in a 12-month period 3) that constitutes telemarketing. Whether Defendant had the required policies and procedures in place is an affirmative defense, given the introduction of those requirements with an "unless" clause, which is considered to be "telltale language … indicative of an affirmative defense." *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 362 (3d Cir. 2015). Nevertheless, it will be discussed.

There is no predominance issue regarding whether a message was from or on behalf of Defendant, as all calls in the class definitions were from or on behalf of Defendant and Defendant does not contest that it placed those calls.

There is also no predominance issue regarding which Class Members received

---

[6] In 2003, this was expanded to include calls to cellular telephones. 47 C.F.R. § 64.1200(e).

more than one call, as the class definitions are limited to such persons, and such persons can be easily identified from Defendant's records.

There is no predominance issue whether calls were telemarketing. "Telemarketing" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). All calls in the class definitions were for the for the purpose of encouraging enrollment in or providing information about Walden University. Whether these purposes qualify as "telemarketing" would not change from member to member.

Finally, whether Defendant had the required policies and procedures in place is a class-wide issue: Defendant either had them or it did not. They were either legally adequate, or they were not. This existence and/or adequacy does not change from member to member.

b. FTSA § 501.059(5)

The FTSA § 501.059(5) prohibits a "telephone solicitor" from initiating a "telephonic sales call" to a consumer who previously asked it to stop. Accordingly, Plaintiff would need to show that (1) Defendant was a "telephone solicitor",[7] (2) that its calls were "telephonic sales calls",[8] and (3) that each class member asked Defendant

---

[7] Defined as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated dialing or recorded message devices." FTSA, 501.059(1)(i).

[8] Defined as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer

to "stop" prior to the messages.

The first two issues are indisputably subject to generalized proof. Whether Defendant was a solicitor does not change from Florida Class Member to Florida Class Member. Similarly, whether Defendant's calls were "telephonic sales calls" also does not change from member to member. All calls to putative Class Members were sent for the purpose of encouraging enrollment in or providing information about Walden University. Whether such messages are "telephonic sales calls" would thus be resolved on a class-wide basis.

The final issue, that each member asked Defendant to "stop", is ostensibly individualized, but it is trivial relative to the other issues. Defendant maintains records of all inbound and outbound calls, as well as the names and addresses associated with corresponding phone numbers and which numbers were associated with a "do not call" request. Therefore, identifying those who received a call for the purpose of encouraging enrollment in or providing information about Walden University after that person asked Defendant to stop is a simple matter of extracting from Defendant's database all telephone numbers associated with a "do not call" request, then further identifying which of those numbers continued to receive calls after that request. This process could easily be automated and completed with minimal work. Indeed, Defendant has already done this, which is how the Parties arrived at the class sizes

---

goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes."

discussed herein.

### 2. Superiority.

Plaintiff must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Absent class treatment in this case, each individual member of the proposed class would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings across the country, the result of which would be a multiplicity of proceedings conducted at significant expense to both the judicial system and the litigants. Such a result would be neither efficient nor fair to anyone, including Defendant. Moreover, there is no indication that class members have a strong interest in individual litigation, let alone any incentive to pursue their claims individually. The potential economic payout is small, limited to $500 per call. *See Benson*, 2021 U.S. Dist. LEXIS 101057 at *23 (noting a small economic payout of less than $6,000 on average supports the superiority of a class action). Indeed, to the best of Plaintiff's knowledge, no one else has sued Defendant over their calling practices. There are no manageability issues either, as any individual questions are manageable and will not result in mini-trials. On the other hand, this Settlement allowed Settlement Class Members to obtain compensation in one fell swoop, with minimal work or output required from them. Fairness, efficiency, and finality favor treating this as a class action.

### V.    CONCLUSION

Plaintiff respectfully requests that the Court 1) finally approve the proposed

Settlement; 2) finally certify the proposed Classes; 3) finally appoint Plaintiff's attorney Jeremy M. Glapion of Glapion Law Firm and Eric Kem of Eric Kem Injury Lawyers as Class Counsel; 4) finally grant Plaintiff's Motion for Attorneys' Fees and Costs; and 5) grant any other relief this Court deems necessary, just, and proper.

### STATEMENT OF CONFERRAL
### WITH RESPECT TO M.D. FLA. 3.01(G)

Class counsel has conferred with Defendant's counsel in connection with this motion. Defendant supports final approval of the settlement. Defendant supports final certification of the class for settlement purposes only.

Dated: October 9, 2024

*/s/ Jeremy M. Glapion*
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com